IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHAWNTA DENISE DUNN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:23-cv-200-SMD |
| ) | |
| MARTIN J. O'MALLEY, ) | |
| *Commissioner of Social Security*, ) | |
| ) | |
| Defendant. ) | |

**<u>OPINION & ORDER</u>**

On January 4, 2019, Plaintiff Shawnta Denise Dunn ("Dunn") proactively applied for a period of disability and disability insurance benefits ("DIB"), along with supplemental security income ("SSI"), alleging she became disabled on December 31, 2018. Tr. 105-06, 278-89. Dunn's applications were denied at the initial administrative level. Tr. 107-18. She then requested and received a hearing before an Administrative Law Judge ("ALJ"), who found on August 10, 2022, that Dunn was not disabled. Tr. 26-38. Dunn appealed to the Social Security Appeals Council ("Appeals Council"), which denied review. Tr. 1-3. Therefore, the ALJ's order became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Dunn appeals that decision under 42 U.S.C. § 405(g). For the reasons that follow, the undersigned AFFIRMS the Commissioner's

decision.[1]

I.  **STATUTORY FRAMEWORK**

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a benefits determination, an ALJ employs a five-step process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[2] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004). A claimant's RFC is what the claimant can still do—despite her

---

[1] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. Pl.'s Consent (Doc. 14); Def.'s Consent (Doc. 13).

[2] *McDaniel* is an SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

impairments—based on the relevant evidence within the record. *Id.* The RFC may contain both exertional and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy she can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines ("Grids")[3] or (2) the testimony of a vocational expert ("VE").[4] *Id.* at 1239-40.

## II. STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the ALJ applied the correct legal standards. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A court may reverse the Commissioner's final decision when it is not supported by substantial evidence, or the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). A court is required to give deference to factual

---

[3] The Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[4] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

findings, with close scrutiny to questions of law. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

For purposes of judicial review, "[s]ubstantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F.2d at 1145.

## III.   ADMINISTRATIVE PROCEEDINGS

Dunn was 29 years old on her alleged disability onset date and 33 years old at the time of the ALJ's decision. Tr. 38, 56, 278. She has a limited education and last worked in 2018 at Little Caesar's. Tr. 55-56, 295. Dunn alleged disability due to depression, anxiety, seizures, panic attacks, and post-traumatic stress disorder ("PTSD"). Tr. 300, 349-50.

In the administrative proceedings, the ALJ made the following findings with respect to the five-step evaluation process for Dunn's disability determination. At step one, the ALJ found Dunn has not engaged in substantial gainful activity since her alleged onset date. Tr. 29. At step two, the ALJ found Dunn suffers from the following severe impairments: borderline intellectual functioning, PTSD, anxiety, and depression. Tr. 29. At step three, the ALJ found Dunn does not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments. Tr. 29-31.

The ALJ then proceeded to determine Dunn's RFC, finding she has the capacity to perform a full range of work at all exertional levels but with certain non-exertional limitations. Tr. 31-36. At step four, the ALJ found Dunn unable to perform any past relevant work. Tr. 36-37. At step five, the ALJ considered Dunn's age, education, work experience, and RFC and found that there are jobs that exist in significant numbers in the national economy that Dunn can perform. Tr. 37-38. Accordingly, the ALJ found Dunn has not been under a disability from December 31, 2018, through the date of his decision. Tr. 38.

## IV.    DUNN'S ARGUMENTS

Dunn presents three arguments before the Court for review:

(1) Whether the ALJ failed to properly evaluate the medical opinion evidence from her treating psychiatrist;

(2) Whether the ALJ failed to properly evaluate her subjective symptoms; and

(3) Whether the ALJ failed to properly determine her mental RFC.

Pl.'s Br. (Doc. 6) p. 2. As explained below, the undersigned finds that the ALJ did not err as to any of these issues.

## V.    ANALYSIS

### 1. Whether the ALJ failed to properly evaluate the medical opinion evidence from Dunn's treating psychiatrist.[5]

---

[5] The Social Security Administration revised its regulations regarding the consideration of medical evidence, applying those revisions to all claims filed after March 27, 2017. *See* 82 FR 5844-01, 2017 WL

On March 16, 2020, Dr. Fernando Lopez—Dunn's treating psychiatrist—opined as to Dunn's mental functioning limitations through a check-the-box report. Tr. 592-94. In the report, Dr. Lopez found that Dunn had "marked" limitations in ten areas of mental functioning and "moderate" limitations in six. *Id*. Although the report provided a section for additional comments, Dr. Lopez provided none, nor did he otherwise indicate how Dunn's marked and moderate limitations would specifically affect her ability to work. *Id*. at 594.

The ALJ found Dr. Lopez's opinion "not persuasive." Tr. 34. In support of this finding, the ALJ concluded that the opinion "was grossly inconsistent with the medical evidence of record in general, especially Dr. Lopez's own recorded mental status examination results showing [Dunn] to be nearly completely within normal limits on a recurrent basis over an extended period of time." Tr. 34. He also found that the opinion was not supported "by an analytical explanation of the opinion's basis in the medical evidence of record." Tr. 34.

Dunn argues that the ALJ's evaluation of Dr. Lopez's opinion lacks substantial evidence because "a wealth of medical evidence" contradicts the ALJ's finding that Dunn's mental examinations were normal. Pl.'s Br. (Doc. 8) pp. 2-7.  In support, Dunn points to medical records showing, *inter alia*, reports of self-harm, thoughts of suicide, anxiety, panic attacks, anger, racing thoughts, and distressing memories of trauma. Pl.'s Br. (Doc. 6) pp. 4-5. Dunn contends that these records, which she claims "cannot be

---

168819 (Jan. 18, 2017). Dunn filed her claim on January 4, 2019, so the revised regulations apply here. *See* 20 C.F.R. § 404.1520c.

reasonably described as 'normal,'" establish "the proper standard for evaluating the severity of [her] mental impairments" and therefore the ALJ improperly discarded Dr. Lopez's opinion by relying on contrary evidence. *Id*. at 6. Further, Dunn asserts that the ALJ otherwise failed to articulate how he considered the consistency of these records with Dr. Lopez's opinion. *Id*. at 6-7.

In evaluating the persuasiveness of a medical source's opinion, an ALJ considers five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(a), (c). These factors are applied "when considering the opinions from *all* medical sources." *Simon v. Kijakazi*, 2021 WL 4237618, at *3 (M.D. Fla. Sept. 17, 2021) (emphasis in original) (citing 20 C.F.R. §§ 404.1520c(a); 416.920c(a)). Importantly, then, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

Supportability and consistency are the "most important" factors considered by the ALJ. 20 C.F.R. § 404.1520c(a); *Simon*, 2021 WL 4237618, at *3. As such, the ALJ must articulate how these factors were considered in evaluating a medical source's opinion. *See* 20 C.F.R. § 404.1520c(a)-(c); *see also Works v. Saul*, 2021 WL 690126, at *15 (N.D. Ala. Feb. 23, 2021) (While an ALJ need not articulate how he applied each factor to the medical source opinion, the ALJ must state more than broad conclusions, at least with respect to supportability and consistency.). The ALJ may—but is not required

7

to—explain how he considered the other factors. *Nix v. Saul, Comm'r of Soc. Sec.*, 2021 WL 3089309, at *6 (N.D. Ala. July 22, 2021) (citing 20 C.F.R. § 404.1520c(b)(2)).

Here, as set forth above, the ALJ found Dr. Lopez's opinion to be "grossly inconsistent with the medical evidence of record in general," which showed Dunn to "be nearly completely within normal limits on a recurrent basis over an extended period of time." Tr. 34. Throughout his opinion, the ALJ noted multiple medical records generated prior to Dr. Lopez's opinion showing that Dunn's mental status evaluations were within completely normal or mostly normal limits. *See* Tr. 33 (noting visits from January, March, June, September, October, and December 2019). The ALJ also concluded that these records showed that Dunn's medication regimen—although adjusted at times—was controlling and/or improving her symptoms. *See* Tr. 33 (noting that Dunn's mental condition was stable during visits in January, March, June, and October 2019). Further, the ALJ pointed to a contemporaneous mental status examination—which occurred two days after Dr. Lopez opined as to the severity of Dunn's mental conditions—showing "no abnormalities or defects." Tr. 34. And while this medical record noted that Dunn was experiencing anxiety and had admitted to self-harming for approximately three months, it also indicated that Dunn had "appropriate" thought processes; "good" judgment; "intact" concentration/attention; no recent or remote memory problems; and "appropriate" mood and affect. Tr. 604-05. Thus, the ALJ concluded that these and other records from the same timeframe indicated "how overblown" Dr. Lopez's opinion was of Dunn's mental limitations. Tr. 34. This is substantial evidence supporting the ALJ's determination that Dr. Lopez's opinion was not persuasive.

Dunn cites evidence that arguably supports Dr. Lopez's opinion as to the severity of her mental conditions. But the ALJ considered much of this evidence when finding Dr. Lopez's opinion not persuasive. *See* Tr. 34-35 (acknowledging evidence showing, *inter alia*, that Dunn reported recurrence of thoughts of self-harm; experienced anxious jittering, poor appetite, binge drinking, night sweats, and nightmares; and had intrusive thoughts, depression, and visible and audible hallucinations). Dunn essentially invites the Court to accept this evidence, reject the evidence relied on by the ALJ, and reach a different conclusion about Dr. Lopez's opinion concerning the extent of her mental capabilities. But the Court cannot reweigh the evidence, as Dunn invites it to do. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Instead, the Court must affirm the ALJ's decision where, like here, it is supported by substantial evidence. *See Jenevieve Elizabeth Reynolds, o/b/o J.E.C., a minor v. Martin O'Malley, Comm'r of Soc. Sec.*, 2024 WL 1070249, at *3 (M.D. Fla. Mar. 12, 2024) ("The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.") (citing 42 U.S.C. § 405(g)).

In sum, the ALJ addressed with sufficient specificity the persuasiveness of Dr. Lopez's opinion—as he was required to do under the new regulations—and substantial evidence—as set forth by the ALJ and recounted above—supports the ALJ's findings as to these factors. As such, the Court finds that the ALJ did not err in determining that Dr. Lopez's opinion was not persuasive or in failing to sufficiently explain how he reached such a determination.

### 2. Whether the ALJ failed to properly evaluate Dunn's subjective symptoms.

Dunn next argues that the ALJ failed to properly evaluate her subjective symptom testimony. Pl.'s Br. (Doc. 6) pp. 7-11. Specifically, she contends that the ALJ "did not provide 'explicit and adequate reasons' for finding [her] statements not supported," thereby frustrating judicial review. *Id*. at 10-11.

A Social Security claimant may prove disability through subjective testimony regarding her symptoms. *Markuske v. Comm'r of Soc. Sec.*, 572 F. App'x 762, 766 (11th Cir. 2014). To evaluate whether a claimant has established disability through subjective symptom testimony, the ALJ must apply the following test: first, the ALJ must determine whether there is evidence of an underlying medical condition, and second, whether there is objective medical evidence substantiating the severity of the symptoms from the medical condition or whether the medical condition is of sufficient severity that it would reasonably be expected to produce the symptoms alleged. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see* 20 C.F.R. § 416.929.

If an ALJ determines that a claimant's medical condition could reasonably be expected to produce the claimant's symptoms, the ALJ must then evaluate the intensity and persistence of the claimant's symptoms to determine their affect on the claimant's capacity to work. *Klawinsky v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776-77 (11th Cir. 2010); 20 C.F.R. § 416.929(c)(1). In evaluating a claimant's subjective symptoms, the ALJ may consider a variety of factors, including objective medical evidence, treatment history, response to medication and other treatments, sources of pain relief, and the

claimant's daily activities. *See* 20 C.F.R. §§ 404.1529(c)(1)-(4). The ALJ may also consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." 20 C.F.R. § 416.929(c)(4).

If an ALJ rejects a claimant's testimony, the ALJ "must articulate explicit and adequate reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). The ALJ's decision "does not need to cite 'particular phrases or formulations; but it cannot merely be a broad rejection [of the claimant's symptoms,] which is 'not enough to enable [the court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)). On appeal, then, "[t]he question is not . . . whether the ALJ could have reasonably credited [the claimant's symptom] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 938-39 (11th Cir. 2011); *see also Dyer*, 395 F.3d at 1212 (reversing district court's reversal of the ALJ because "the district court improperly reweighed the evidence and failed to give substantial deference to the Commissioner's decision" to discredit claimant's subjective testimony). If the ALJ's "clearly articulated credibility finding" is supported by substantial evidence in the record, the ALJ's finding will not be disturbed. *Foote*, 67 F.3d at 1562.

Here, Dunn testified that she is unable to work because her "body gives out, and [she] can't get sleep." Tr. 56. She claims that she has anxiety and panic attacks when she feels hot and lightheaded; that she blacks out at times and is unable to focus; and that she

feels like there is "darkness around [her]," causing her to isolate from others. Tr. 56-61. Dunn claims that her medication helps with her anxiety but that she continues to have anxiety attacks, lasting approximately thirty minutes, two or three times per week. Tr. 61, 63-64. Dunn has not driven since she stopped working; she is able to clean and sit outside on good days; and she receives frequent help from her mother caring for her children. Tr. 62, 65-66.

When evaluating Dunn's testimony, the ALJ found that Dunn's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects were not entirely consistent with the evidence. Tr. 32. In reaching this conclusion, the ALJ acknowledged records showing that Dunn appeared to be of low average to below average intelligence and that she reported at times to experience depression, anxiety, binge drinking, trouble focusing, poor appetite and sleep, and a history of self-harm. Tr. 33-35. On the other hand, the ALJ noted that Dunn had mostly normal and unremarkable mental status examinations and that her medications improved her symptoms. Tr. 33-35. In particular, the ALJ cited Dunn's reports that she was doing well, that her medication was working, and that she was not experiencing or was minimally experiencing depression and anxiety. Tr. 35. He also highlighted the finding of Dr. E. Russell March, Jr., who concluded at the initial administrative level that Dunn could work with limitations, and the findings of Dr. Joanna Koulianos, who determined at the initial administrative level that Dunn had moderate limitations in several areas of mental

functioning. Tr. 36 (citing Exs. 1A & 2A). This is substantial evidence supporting the ALJ's decision to reject Dunn's symptom testimony.

Of course, Dunn disagrees with the ALJ's interpretation of the evidence and invites the Court to find her symptom testimony sufficient to establish disability. But as noted above, on appeal "[t]he question is not . . . whether [the] ALJ could have reasonably credited [Dunn's] testimony, but whether the ALJ was clearly wrong to discredit it." *See Werner*, 421 F. App'x at 939. Because the ALJ articulated inconsistencies between Dunn's symptom testimony and the evidence as a whole, the Court finds that substantial evidence supports the ALJ's determination that Dunn's impairments were not as severe as she alleged. *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th 2014) (noting courts will not disturb a clearly articulated finding supported by substantial evidence). As such, the ALJ did not err in rejecting Dunn's symptom testimony.

### 3. Whether the ALJ failed to properly determine Dunn's mental RFC.

Lastly, Dunn argues that the ALJ failed to properly determine her mental RFC by rejecting the opinions of Dr. Lopez (her treating psychiatrist) and by failing to explain why he did not adopt the limitations of Dr. Koulianos (the state agency psychiatric consultant), whose opinion he found "persuasive to the limited extent that it indicates that [Dunn] can be expected to perform at least work according to simple instructions[.]" Pl.'s Br. (Doc. 6) pp. 11-15 (referencing Tr. 36). Specifically, Dunn contends the ALJ erred by failing to account for Dr. Koulianos's opinion that she is moderately limited in understanding, remembering, and carrying out detailed instructions and is limited to

simple and short instructions. *Id*. (referencing Tr. 87). Dunn asserts that the error is not harmless because the jobs identified by the ALJ require level 2 reasoning while her limitations should restrict her to level 1 reasoning jobs. *Id*. at 12.

The ALJ has the responsibility of assessing a claimant's RFC at the hearing level. 20 C.F.R. § 404.1546(c). In performing this task, the ALJ is required "to consider all of the medical and other evidence of record[.]" *Ramos v. Comm'r of Soc. Sec.*, 2021 WL 960688, at *6 (M.D. Fla. Mar. 15, 2021). Importantly, the ALJ is not required to use "magic words in a claimant's RFC assessment." *Carbone v. Comm'r of Soc. Sec.*, 2017 WL 1476283, at * 3 (M.D. Fla. Mar. 3, 2017). And "there is no requirement that the ALJ include every limitation [from a physician's opinion] verbatim" into an RFC determination. *Hilton v. Comm'r Soc. Sec.*, 2016 WL 561364, at *3 (M.D. Fla. Feb. 12, 2016); *see also Billups v. Colvin*, 2013 WL 6840383, at *8 (M.D. Ala. Dec. 27, 2013) (stating that there is no requirement that an ALJ adopt an expert opinion verbatim when determining a claimant's RFC); *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019) (noting that the ALJ is not required "to specifically address every aspect of an opinion or every piece of evidence in the record"). This is true even when an ALJ finds a physician's opinion persuasive. *Burrell v. Kijakazi*, 2022 WL 742841, at *3 (E.D. Penn. Mar. 10, 2022) ("[W]hen determining a claimant's RFC, an ALJ is not required to incorporate every finding or limitation made by a medical source simply because the ALJ finds the opinion persuasive."). Similarly, an ALJ is not bound by the prior administrative medical findings from state agency consultants. *Dulin v. Saul*, 2020 WL 1314488, at *6

(N.D. Fla. Jan. 2, 2020) (citations omitted), *R&R adopted by* 2020 WL 1310473, at *1 (N.D. Fla. Mar. 19, 2020).

Here, the ALJ found that Dunn could perform work that required her to understand, remember, and carry out simple and detailed but not complex instructions. Tr. 31. The ALJ further concluded that Dunn could use her judgment to make simple work-related decisions; that she could only adjust to occasional changes in a routine work setting; could not perform work requiring a specific production rate; and could frequently interact with supervisors, occasionally with coworkers, and never the public. Tr. 31. In reaching this conclusion, the ALJ explained that Dunn's borderline intellectual functioning prevented her from performing work that required complex instructions. Tr. 32. The ALJ also explained that she could perform work as outlined in her RFC because her medications generally controlled her symptoms. Tr. 35. The ALJ further discussed how portions of Dr. Koulianos's opinion were not persuasive because they lacked consistency with the record and supportability because the opinion did not provide an explanation. Tr. 36.

As explained above, it is the ALJ's responsibility—not a state agency consultant's or a treating physician's—to determine a claimant's RFC. And in making the RFC determination, the ALJ must consider the evidence as a whole and is not required to base the RFC on a medical opinion—even if he finds that opinion persuasive. Therefore, the ALJ did not err as a matter of law by failing to impose the mental limitations articulated by Dr. Koulianos even though he found that opinion persuasive as to Dunn's ability to perform work requiring simple instructions. *See, e.g.*, *Nichols v. Kijakazi*, 2021 WL

15

4476658, at *8 (M.D. Ala. Sept. 29, 2021) ("The ALJ was under no obligation to adopt verbatim all of [the doctor's] limitations into the RFC.").

Further, while other evidence could be interpreted to justify additional limitations in Dunn's RFC, it is not the province of the Court to reweigh the evidence before the ALJ. Thus, because the Court finds that the ALJ's RFC determination is supported by substantial evidence, and because the ALJ explained in logical detail why he imposed the limitations he did in Dunn's RFC, the Court finds that the ALJ did not err in rejecting the more restrictive limitations suggested by Dr. Koulianos or Dr. Lopez.

## VI. CONCLUSION

As explained above, the undersigned finds that the ALJ did not commit reversible legal error and that substantial evidence supports the Commissioner's decision. Accordingly, it is

ORDERED that the Commissioner's decision is AFFIRMED. A separate judgment will issue.

DONE this 3rd day of April, 2024.

/s/ Stephen M. Doyle
Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE